Our fourth case for this morning is Zappa and Hahn v. Smith Jeffrey Smith Mr. Raphael. Mr. Raphael Help yourself. Don't worry. All right. Morning. You may proceed. All right. My name is Lance Raphael. I represent the plaintiffs, a married couple, Mary Zappa and Randall Hahn, who bought a motorcycle here to do road trips during their retirement years. I'd like to incorporate my appellate briefs and reply into the presentation here today and start with a little challenge, I guess. You know, the reason why the case was dismissed on a motion to dismiss stage was based upon a lack of personal involvement. But the record, meaning all of the details in the complaint and the exhibits to the complaint, make it seemingly impossible for Officer Gonzales to have had any further personal involvement in the repossession than was already alleged. I understood the other briefs, though. I mean, maybe that's partly true, but I thought that they were emphasizing that the nature of the things that Officer Gonzales did, these threatening phone calls and then driving over to Lake Zurich with Mr. Smith, was simply not enough to trigger liability as a I think that they did raise that, but it was in a different context. The cases that they raised with regard to, you know, a phone call never being enough had to do with a case where the phone call to the plaintiff to turn himself in, which would have been like an imprisonment claim or an arrest claim, didn't rise to the standard of, you know, a reasonable person thinking that their freedom was weren't free to leave. The cases that we deal with deal with the deprivation of property, the seizure of property, in a later cited case, which is this court's case of Schlesinger, says it very happily. We may assume that an order by the police along the lines of do X or be taken into custody requires the same sort of justification that custody itself requires. That is, depends on probable cause to believe the person has committed a crime. We can't find a case holding this, but the proposition is sensible for the same reason your money or your life is an objectionable demand, citing to another earlier Seventh Circuit case. Suppose the policeman goes up to somebody, points the gun at him, and says, stop, halt, you're under arrest, and he runs away. Has he been arrested? It's a hypothetical that... It's not a hypothetical, this actually happened in the Supreme Court, although it wasn't a gun, it was a robot. Ah, I don't know the answer to that question. The Supreme Court said that somebody who does not submit to a claim, to an assertion of arrest, has not yet been arrested. No seizure. Ah, well in that case then, it would be inapplicable to this situation, where my client did submit to the threats of this officer. He didn't need to come out to their house, as he threatened to do. They believed him, and then they turned over their vehicle, which is their property. So in this case, the property was absolutely seized as a direct and proximate result of his... Pardon? It wasn't seized by the police, it was taken back by the dealership. At the Lake Zurich Police Department, along with the Palatine Police driving out there to take it. My understanding is that your client, one of your clients, dropped it off near the police station, and it was picked up by the dealership. Is that... No, the record shows that he went to the Lake Zurich Police Station as a result of the phone calls from the Officer Gonzales in Palatine, saying I'm going to arrest you. Because he thought if he showed up to the Palatine Police Department, he would in fact be put into cuffs, he went to the... Okay, so it's dropped off in a different police station. Correct. Yeah, outside of the village of Palatine's jurisdiction. Picked up by the dealership, right? And the police officer from Palatine. Gonzales and Smith... Gonzales went out there, according to his... Everything in here, I mean, from his police report, is what really demonstrates the absurdity of this, because his own police report, Officer Gonzales's, shows that he knew, at the time he made the phone call to my client, which, if it was just, I'm investigating something, that would be great. It says here, he's showing up in response to a report of a stolen auto. We know that the auto, it was a motorcycle, so that's wrong, and we know that it wasn't stolen, because his report says he was told by Jeffrey that they had sold a motorcycle to my client. So, essentially, your case is, here are these people, maybe Smith and Gonzales working in cahoots, who blow up a mutual mistake contractual problem into allegations of stolen property, and Mr. Hahn and Ms. Zappa yield to this, give up the motorcycle because they don't wanna get arrested, apparently, which is a very rational thought. And so they're bullied into giving up the motorcycle without ever even getting a tender of the money back. Or the other motorcycle. And if this was something that the officer was doing in a legitimate fashion, the first thing is, and in some of the cases, it talks about the idea of the officers acting in concert with the repossession agents, but never actually checking to see that they have authority to take the property. We've got a completed sale. My client paid everything. They made a down payment before any bill of sale, so this whole red herring of there having to be... It's altogether about $7,800. Yeah, 76 and change. But they had first paid $1,600 on their credit card, without any contract, without any anything, and then they were to come back after the dealer prepped the bike, where they put the dealer's license plate on it and handed them the keys and so forth. What's missing from the whole story, which I would have learned in discovery, is, hey, where's the title? Where's the title to the 97 bike? Where's the title to the 04 bike? Why would an officer say, I'm gonna assert that you, as a curbside judge, you, the dealer, owns this bike, and he, the purchaser, doesn't, without any title or authority for... The problem with that theory, and I have a lot of sympathy for the position your clients found themselves in, but from a legal point of view, the problem is, the police have a report from the owner of the motorcycle place, Mr. Smith, that it's been stolen. And the law does say that they don't have a duty to just keep investigating things, even though it's often the case they could do a better investigation. Respectfully, actually, he gets a call for a stolen auto, shows up and finds there was nothing stolen, and has no evidence being given to him by the complaining witness, I guess, of anything actually having been stolen. It says that they sold the motorcycle to my client, and my client called the dealership up a couple days later to say, you gave me the wrong paperwork for the motorcycle I actually bought and paid for. So where is the documentation to establish the complaining witness actually owns the motorcycle that they're now asking the officer to go out and repossess on their behalf? He's not calling up my client, as he should, to investigate further. This is all taking place during the course of him responding to a call at 552 in the evening, and then him making multiple calls and multiple threats to my client, where he then drives out, accompanying the dealer to another jurisdiction, without any legitimate purpose to keep the piece or anything, but to actually procure the motorcycle, and ensure that the dealer retakes possession of the motorcycle until he actually leaves. In terms of personal involvement, how can you have any more personal involvement than him being the alpha, the cause for the deprivation, and completing the deprivation all the way through and not leaving until it's done? I think it would be the right analysis if somebody claiming to be the tenant of some house calls the police and says, Jones, a squatter, is refusing to leave. The police arrive, the person who claims to be the owner or the lawful tenant says, this is Jones, he won't go. Jones says, I have a legal right to be here, I'm actually a lessee here. And the police take Jones away. Without looking at anything other than two people's say-sos? They listen to their say-so, and the police take Jones away. Well, personally, I think that's improper without having first questioned them. You know this court has two cases on that subject, and they both hold that that's not prohibited by the Fourth Amendment. I can't help that. The facts that you gave me, I don't agree with. Why is your case any different? There's actually more documentation in this case. The dealership calls the police. The dealership had no documentation of this vehicle. There is more documentation in this case. The dealership calls the police and says the DIN on their motorcycle is not the one we sold. It may be true or false in your view, but there's more documentation than the one in the cases we've had before. And the police, we will assume, will leave the dealership. Okay, this one involves the deprivation of property, not an arrest. It's a different analysis. That makes for a Fourth Amendment violation, even though somebody being put in the blink is okay. I said before I don't think it's okay, but that's my personal opinion, which is irrelevant. Okay, thank you very much, Mr. Rafael.  Thank you, Your Honor. May it please the Court. Michael Cajal on behalf of Officer Gonzalez in the village of Palatine. This is not a repossession case, despite plaintiff's attempts to turn it into one. What's troubling about this case actually is Officer Gonzalez's notes, because he seems to understand in his own notes that this is a commercial dispute between these two parties, and to intervene with this heavy-handed threat of arrest for grand theft auto, which I'm going to assume for the sake of argument includes motorcycles and other things that drive with a motor, is quite out of line for a commercial dispute. And then he goes with Smith over to Lake Zurich and supervises the taking of the bike. And I assume by the notes you mean the police report, the Palatine police report. Yeah, yeah, in his own handwriting. I think whatever happened at the Harley dealership between the plaintiffs and the Harley dealer, and whatever state law case that may be, it has nothing to do with Officer Gonzalez in the village of Palatine, because what the police reports and the complaints show here is that when Officer Gonzalez reported to the dealership for the report of a stolen vehicle, what he learned immediately was that, although there had been some sort of transaction between the Zappas and the dealership, what the Zappas now had, or what Zapp and Hahn now had possession of, was a 2004 Harley Davidson, which was not the motorcycle that was part of the gross sale. I understand that. I'm looking at the report, Supplemental Appendix 24, and he's recounting all of this. You know, Randall was scheduled to pick up the motorcycle, he paid the remaining balance, left with a different motorcycle, he writes the VIN down, and then he notes Randall is the one, that is to say Randall Hahn, calls the dealership and tells them that the VIN is wrong, so he's not trying to sneak off to the next state with the motorcycle, copy of the bill of sale, he's told he took the wrong motorcycle, then he finds out there's essentially this commercial dispute, Randall doesn't want to bring it back, and he claims he bought it, and then, all of a sudden, here we are with this set of threats. It's crazy. Well, I think, Judge, what happens here, when you look at the report, when Randall is advised that he took the wrong motorcycle, and he needs to bring it back, because that's what the bill of sale shows, Randall has the wrong motorcycle. Well, you know, you're acting as though all commercial disputes, suppose I order, you know, a furniture set from Macy's, and they deliver it, and I discover that they've delivered the wrong model or something, and I call them up, and, you know, they say, oh, accidentally we gave you a much more valuable furniture set. Well, I mean, they might pursue efforts. If I said, no, this is what you sold me, I mean, it's just a contract dispute. Are all contract disputes, in your view, criminally enforceable, when somebody has a misdelivery? I think what we have here... No, really, are all contract disputes, when a misdelivery of something more valuable is involved, something that the criminal law of the state of Illinois should be concerned with? No. Well, then why is this one? This one is because when Officer Gonzalez reached out to the plaintiffs in this case, to advise them that the motorcycle that they had in their possession, they did not have a lawful possessory interest in that motorcycle. That wasn't the bill of sale that they had. That wasn't what the contract that both sides, and the contract that's attached to the complaint in this case, says. Well, now you're saying that the police will enforce one side's view of contract disputes, because Chief Judge Wood's furniture was not what she lawfully had in her possession, according to the police. You can't have this both ways. And you want the police to intervene every time a seller accidentally, you know, we're talking about the world of mistake here, right? Every time a seller accidentally gives somebody something more valuable, than the seller meant to give them. This seller apparently meant to give them the 1997 motorcycle, which, by the way, was priced only at $5,000, not at $6,000 plus tax. And this seller made a mistake. They gave them the more valuable motorcycle. Commercial dispute, as I see it, and the courts of Illinois are open to resolve commercial disputes. They could get a judgment against the Hans and Zappas for the value of the thing. They could perhaps get rescission. There are a host of remedies for these kinds of things. I agree. That's why this is a proper state law case between the plaintiffs in this case and the Harley dealership. Well, but the problem is Officer Gonzalez's participation is what changes the texture of it. I certainly agree with you that there are a host of state law claims. But his participation in this is so small, and you have to look at the information that he had at the time. And that's why it's akin to the Rogers v. Lincoln Park towing case, or the Williamson v. Curran case from this circuit, regarding what the officer knows at the time. So you think it's fine for the police to threaten people that they're going to be arrested whenever a commercial dispute comes up? You can call it threatening. You can call it also informing, advising, and warning them of what might happen. I'm informing you that I'm going to take you to jail. You can be arrested if you are in possession of a motor vehicle that you don't have lawful possession of. And that's what Officer Gonzalez... So a contractual dispute means you don't have lawful possession of the thing that you thought you bought. That is, that's theft under the statute. You might be on perfectly solid ground to say the Fourth Amendment permits this, but it's fundamentally stupid. I'm surprised, though, to see you defending it on the merits. All the officer did was... as a result of a commercial dispute. But it was not a commercial dispute at the time. If you read Officer Gonzalez's own note, which is here, somewhere around page 24, it's plain that it's a commercial dispute. There's no other conceivable way. So we don't have to take anybody else's word for it. He knew it was a commercial dispute, that the wrong model had been delivered, that payment had been made, that there was an argument between Randall and the dealership. Officer Gonzalez knows all of that. And you seem to be acting as though this is someone saying, stop, that person is stealing my car right there at the scene. That's not the situation. What Officer Gonzalez was dealing with here was a report of a stolen vehicle. Report of a theft. No, but a report of a theft that he has described how it came about, that there was a sale, that it was the wrong motorcycle, and all of that. It's not a theft in the abstract. It's not like he looked out in his driveway one day and discovered that his car was gone. But it's still a theft under the Illinois statute. They have possessed that motorcycle. I'm not even sure that's correct, to tell you the truth. It's no different than in the Williamson v. Curran case where they had the horse on the property and the court found that that was, and they went and arrested those people. No one was arrested here. The only thing Officer Gonzalez did was call up and say, look, you've got some sort of dispute going on. I'm telling you, you have a motorcycle that you don't have the paperwork on. Suppose A sells Rose, the barren cow, to B. And it turns out that unexpectedly, Rose gets pregnant. Would the police come and threaten to take the buyer away in Illinois? No, I don't think they would. But in this case, what Officer Gonzalez did was simply tell them that they were, and at the time he made that phone call, based upon the information he had from both the plaintiffs in this case and the dealership, was he had probable cause to arrest them for possession of that motorcycle when they did not have the paperwork for it. And after that, what happened after that was a voluntary action by the plaintiffs in this case to take the motorcycle to the Lake Zurich Police Department where Officer Gonzalez is not present, doesn't even know what's happening at the time, and turn it over to the Lake Zurich Police Department over the advice of the police officer there who said, before you do anything, let me go take a look here and see if there is, has it been reported stolen? Is there a warrant out for your arrest? And finds out there is none, talks to Officer Gonzalez and advises, and everyone is on the same page here at the time they're at the Lake Zurich Police Department because the Lake Zurich Police Department report points that out. He advised Randall what Officer Gonzalez had told him and Randall said he did not have a problem leaving the motorcycle with him and going to get his money back the next day. So there was no seizure, there was no arrest, there was no deprivation of property. As the District Court correctly pointed out, there's no legal, lawful 1983 claim here based on these facts, these reports, and what Officer Gonzalez knew at the time. They took the voluntary action of taking that motorcycle and turning it over. They voluntarily... Okay, you can wrap up. Thank you so much. Anything further, Mr. Raphael? First, I'm going to do something that you probably don't have done often, which is correct the court. Your Honor said it was a commercial dispute. Actually, Officer Gonzalez's own police report classifies the offense or incident classification as a customer management dispute. So your Honor is actually right in the fact that he knew exactly what he was trying to do when he took sides here. More importantly is what he actually did after learning about this. Did the vehicle get impounded? No. If it was the subject of a crime, it would have been impounded and then there would have been a determination as to who actually has the ownership of the vehicle. If it had been a repossession, there would have been notices given to my client under the repossession statute. So again, a court could make a determination as to who had a superior right and interest in the motorcycle. Instead, right now, because of only Officer Gonzalez's conduct, the dealership has the motorcycle or more likely they've taken the motorcycle and sold it to someone else and my client will never see it again. All without having any ability to test that issue before any judge. I wanted to get back to your Honor Easterbrook's question. Just so quickly because you're now out of time. Then in 15 seconds. One, I want to say with the squatter incident, I would assume that arresting the squatter in that incident, the officer is acting in furtherance of being a peacekeeper to prevent some sort of violent activity from occurring. This wouldn't fit that same situation. Thank you very much. Alright, thank you. Thanks to both counsel. We'll take the case under advisement.